No. 60241.—B. K. Elliott Company v. United States, petition 7175–R (Pittsburgh).

WILSON, Judge:   This is a petition for the remission of additional duties filed pursuant to section 489 of the Tariff Act of 1930, which duties accrued by reason of the undervaluation on entry of certain tracing cloths and pencil cloths imported from England and entered at the port of Pittsburgh, Pa.

The involved merchandise was invoiced at various prices per piece of 24 yards, less 2½ per centum and 1 per centum trade discounts, plus packing.   It was entered at the same prices per piece of 24 yards, less 2½ per centum discount, plus packing.   The appraiser advanced the value by applying the same prices to a piece of 20 yards rather than 24 yards, less 2½ per centum discount, plus invoiced cost of cases, resulting in an advance of approximately 20 per centum.

Subsequently, the importer in this case appealed for a reappraisement of the merchandise, but the value returned by the appraiser was sustained.   (B. K. Elliott Co. v. United States, 26 Cust. Ct. 489, Reap. Dec. 7931.)   On review, the decision and judgment of the trial court were sustained.   (B. K. Elliott Co. v. United States, 32 Cust. Ct. 651, A. R. D. 37.)

The secretary of the plaintiff company testified that the particular shipment in question was ordered in 1946.   He stated that it was received in 24-yard lengths and that the price at which entry was made had prevailed for a period of over a year.   An invoice, dated January 15, 1948, covering the merchandise in

question was received in evidence as petitioner's exhibit 1, together with a consular invoice of the same date for the goods (petitioner's exhibit 2).

It appears that the instant merchandise was exported from England on or about January 24, 1948. Petitioner's witness testified that, under date of January 7, 1948, the exporter advised his firm by letter (petitioner's exhibit 3) that, from January 19, 1948, such cloths would be supplied in rolls of 20 yards, instead of 24 yards, as theretofore, and that, effective January 19, 1948, the prices of such cloths in 20-yard lengths would be charged on the basis of a new price list. Petitioner's witness stated that the letter in question came to his personal attention within a week after the date of mailing (R. 7). The pertinent parts of the aforesaid letter, advising as to the increase in price, are as follows:

* * * we have decided from the 19th January, 1948 that all our Tracing Cloths will be supplied in rolls of *20 yards* instead of 24 yards as hitherto.

In view of this, kindly say whether you wish us to increase any orders for 24 yard rolls by one fifth.

Owing to the cumulative cost of cloth, raw materials and labour, we have been compelled to revise the prices of Tracing Cloths and Pencil Cloths, as follows:—

\*         \*         \*         \*         \*         \*         \*

These new prices will be charged for all goods invoiced on and after January 19th 1948.   [Italics quoted.]

A comparison of the invoiced unit prices and the unit prices shown in the price list indicates that, so far as the types of cloths here involved were concerned, the new prices for the 20-yard lengths equaled the old prices for the 24-yard lengths.

Petitioner's witness testified, in this connection, that he did not consider the letter in question as having any bearing on the shipment at bar, inasmuch as the goods imported were in 24-yard rolls and the letter from the exporter advising as to an advance in prices referred to 20-yard rolls, and, for the further reason, that the effective date of the letter was subsequent to the date of the invoice covering the shipment in question (R. 8–9), and stated that it was for these reasons that he did not call the matter to the attention of the appraiser. The witness stated, however, that the files of his company were subsequently made available to the appraiser and that, in making entry of the merchandise, there was no intention on the part of the petitioner to defraud the United States of any revenue, to conceal any facts, or to withhold from customs officials any evidence in connection with the involved goods.

On cross-examination, petitioner's witness admitted that he did not tell the customs officials about the letter relative to an advance in price, petitioner's exhibit 3, until the appraiser, who had information regarding an advance from other sources, called at petitioner's place of business in May 1948 and stated further that, prior to entry, petitioner did not advise its broker as to the contents of said letter (R. 12–13), inasmuch as, in the opinion of the witness, the purchase of the involved goods was a completed transaction prior to the notification of change of price on January 19, 1948. In this connection, the witness explained that the fact that the controlling date in making entry is the date of exportation, "didn't enter my mind at that particular moment," but that, had he known it, he would have changed the prices on entry accordingly (R. 16). Petitioner's witness further stated that, prior to the importation here involved, his firm never imported rolls of cloth other than in 24-yard lengths; that, since shipment of the goods in question, his company has been importing rolls in 20-yard lengths; and that it has been paying the same amount for rolls of cloth in 20-yard lengths as previously paid for rolls in 24-yard lengths.

The question for determination is whether the petitioner has established by satisfactory evidence that the entry of the merchandise in question at a less value than that found on final appraisement was without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the

case, or to deceive the appraiser as to the value of the merchandise. *United States* v. *Pacific Coast Feather Company,* 40 C. C. P. A. (Customs) 141, C. A. D. 510.

In the case at bar, we have only the testimony of the secretary of the petitioning company in support of the petition for remission. While the record does not indicate that he was the one who made the entry here in question but, on the contrary, discloses that it was made by another officer of the firm, we evaluate the testimony of petitioner's witness as binding on the petitioner herein in the present application.

The question of what constitutes satisfactory evidence to support a petition for remission of additional duties has been previously passed upon by this and our appellate court. A case which, in our opinion, parallels the present situation was that before the appellate court in *United States* v. *W. J. Westerfield,* 40 C. C. P. A. (Customs) 115, C. A. D. 507. There, the petitioner had in his possession two invoices, the first of which quoted a higher home consumption price ($3.85 per unit) than a second invoice, forwarded by the importer ($3.10 per unit). This information was not conveyed to the customs officials prior to or at the time of entry, but the importer therein entered the merchandise at the lower price, as disclosed by the second invoice received. It appeared that, prior to entry, the petitioner in the *Westerfield* case, *supra,* had received a communication from the exporter advising him that a new consular invoice was being forwarded to replace the original invoice, which letter contained the further information:

As you see, the current price for home consumption has been changed to $3.10 also for this shipment. We feel sure that this new invoice will reach you before the arrival of the goods and this should help you saving [*sic*] a lot of duty.

On the basis of the record presented in the *Westerfield* case, *supra,* the trial court granted the petition for remission. In reversing the judgment of the trial court in that case, our appellate court, pages 125–126, stated:

The difficulty we experience in agreeing with the decision of the trial court does not grow out of any suspicion of appellee's integrity, but is due to the fact that there is no proof of matters essential to a holding that satisfactory evidence has been produced.
* * * He [petitioner's witness] was not interrogated as to his actual knowledge or lack of knowledge of market prices and values and their place in entering merchandise, but he did have in his possession a paper reciting a current foreign market price, which constituted a foreign value in excess of the value at which the merchandise was entered. It may be agreed that he did not himself understand the significance of the situation, but surely it must be held that the information in the official papers in his possession was sufficient to render it imperative, under the authorities, for him to make inquiry. Prudence required it. Surely it has not been shown that there were no facts or circumstances known to petitioner when the entry was made which would cause a prudent and reasonable person to question the correctness of the values given by him. * * *

As pointed out in the *Westerfield* case, *supra,* the importer was inexperienced in customs matters, and the appellate court agreed that perhaps the petitioner did not understand the significance of the situation there involved. However, we do not believe we can say the same for the petitioner in the present case. Petitioner's witness testified that his company had been importing merchandise of the character here involved for 43 years. Surely, during that period, it must have gained knowledge of what was required of an importer in entering merchandise. The testimony of petitioner's witness as to the reason why his company did not enter this merchandise at a value predicated on the date of exportation is not very persuasive in favor of the petitioner's application, in view of the great length of time that peititioner had been importing merchandise such as that imported.

Petitioner's witness stated that he believed this to be a "completed" transaction and that he did not understand that the imported merchandise was affected by

the price change, because of the language contained in the letter from the exporter that "These new prices will be charged for all goods invoiced on and after January 19th 1948." Petitioner, however, as a prudent business concern, could, in our opinion, have reasonably understood that the aforesaid quoted information referred to future shipments of rolls only in 20-yard lengths. Certainly, the fact that the shipment here was made in 24-yard lengths and that it was received after the effective date of the price change should have put the petitioner on inquiry as to whether the imported merchandise in 24-yard lengths should be valued for duty purposes on that basis in accordance with the price change. While it is true that the merchandise was invoiced before the price change, the fact of the matter is that, at the time of entry, petitioner had knowledge of a price change as to such goods. It would appear that, in view of its vast business experience over many years, petitioner would at least have made inquiry as to what was the proper value for the imported goods, and common business prudence would appear to dictate that the information relative to the price change should have been called to the attention of the appraising officers.

In the present case, had not the appraiser learned through independent sources of the new change in prices, the Government would have been deprived of revenue to which it was entitled. Commenting on this factor, the appellate court, in the *Westerfield* case, *supra*, stated:

Again, since the value, as stated on the first invoice (#196) was an essential fundamental to appraisement, and since Mr. Westerfield had that in his possession, it can not be held to have been established that "he made to the collector in making his entry a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise."

An entrant of merchandise must inform himself as to the correctness of its representations relating to value, and a showing of indifference as to its proper value does not meet the requirements of satisfactory proof under the statute. *Intra-Mar Transport Corp., Formerly Gondrand Transport Corp.* v. *United States*, 42 C. C. P. A. (Customs) 94, C. A. D. 578.

In view of the pronouncements of our appellate court in the *Westerfield* case, *supra*, and on the basis of the record here presented, we feel constrained to hold that the petitioner in this case failed to support its petition by satisfactory evidence and we so find.

The petition is denied. Judgment will be entered accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I find myself unable to agree with the finding of my colleagues that the petitioner in this case failed to support its petition by satisfactory evidence.

I have read the record carefully, and it seems to me that it shows a situation which to a businessman of ordinary reason and prudence would indicate that the shipment involved was the last shipment which would be made at the price which had been in effect for over a year. The letter referred to future shipments, made after January 19, 1948, which would be in 20-yard rolls. The involved shipment was in 24-yard rolls. The price per roll was not changed, but the length of the roll was changed, thus changing the per yard price.

To my mind, an ordinary businessman would consider that he had gotten "under the wire" with his order at the old price. There does not seem to be any question but that payment for the shipment was made on the basis of the old price. The secretary of the petitioner, who was the responsible officer who testified at the trial, frankly admitted that, although his firm had been importing merchandise for 40 years, the fact that the date of *exportation*, and not the date

of purchase, invoice, or lading, controlled for customs valuation did not enter his mind at the time. This mental lapse on a customs technicality, it seems to me, should not deny remission. The fact is, from a *business* standpoint, he was warranted in believing that the old price represented the correct value, while from a *customs* standpoint he was not. The standard imposed, however, is that of a reasonable and prudent businessman, and not a skilled customs expert.

Moreover, I do not think that the fact that the letter was not shown to the customs authorities until an investigation was made after entry should be held against the petitioner. Having honestly, but mistakenly, concluded that the letter controlled shipments other than the involved shipment, I think the officers of the petitioning company were not required to advise the customs authorities of its receipt. Had they done so, perhaps it might have demonstrated some virtue on their part, but their failure to show the letter does not demonstrate any lack of good faith, when the explanation for that failure is shown to be an honest mistake.

I do not think that the facts in the *Westerfield* case, cited by the majority, parallel those in the case at bar. There, the petitioner was, at the time of entry, in possession of two invoices *for the same shipment*, each showing a different price. Here, the petitioner was advised that *subsequent shipments* would be at a higher per yard price, and I would hold that the facts adduced at the trial warrant a finding in petitioner's favor.